### RAINEY v. OLD. (No. 1488.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 10, 1915. Rehearing Denied Nov. 25, 1915.)

1. MALICIOUS PROSECUTION ☞72—PROBABLE CAUSE—MALICE AND INTENT—INSTRUCTION.

In an action for malicious prosecution, an instruction that the burden was on plaintiff to establish that defendant made the complaint in the criminal proceedings without probable cause, and with malice and intent to injure plaintiff, was not bad as requiring plaintiff to prove all three elements thus depriving him of the benefit of the presumption of malice and intent which arises from the want of probable cause, since the want of probable cause is merely the basis for an inference of fact, and does not establish malice and intent as a matter of law.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 168–173; Dec. Dig. ☞72.]

2. MALICIOUS PROSECUTION ☞72—MALICE—INTENT—INSTRUCTION.

While such instruction was open to criticism for legal redundancy, it was not misleading, as tending to inform the jury that defendant could be actuated with malice while without intent to injure plaintiff.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 168–173; Dec. Dig. ☞72.]

3. MALICIOUS PROSECUTION ☞72 — LANDLORD'S LIEN—INSTRUCTION—PROPRIETY.

In a suit for malicious prosecution, where defendant had instituted criminal proceedings on a charge of the theft of a bale of cotton which plaintiff had sold under an alleged landlord's lien on the crop of his tenant, but as to which defendant had a lien for certain advances to plaintiff, an instruction that the relation of landlord and tenant did not exist between plaintiff and his tenant was not objectionable because taking the issue of plaintiff's lien from the jury, or as limiting plaintiff's lien right to advances to the tenant only when it also covered rents, where the evidence showed that plaintiff, at the time of selling, was in the position of a mortgagee without possession or the right thereto, or that he had no landlord's lien.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 168–173; Dec. Dig. ☞72.]

4. MALICIOUS PROSECUTION ☞59 — LANDLORD'S LIEN—COLLATERAL ISSUE.

Such issue as to plaintiff's lien was collateral to the main issue, and could be considered by the jury only on the question of plaintiff's right to sell the cotton and defendant's probable cause in instituting the criminal proceedings.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 125–137; Dec. Dig. ☞59.]

5. LANDLORD AND TENANT ☞110—GROWING CROP—"ABANDONMENT."

Where a tenant left the land rented while the crop was yet ungathered, for the purpose of moving from the state, but contracted with a third person to gather and dispose of the crop for him, the leaving was not an "abandonment" of the crop giving the landlord the right to possession of the land and crop and to have the latter gathered and sold.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 366–369, 371; Dec. Dig. ☞110.

For other definitions, see Words and Phrases, First and Second Series, Abandonment.]

6. MALICIOUS PROSECUTION ☞72—PROBABLE CAUSE—INSTRUCTION.

In a suit for malicious prosecution, the instruction that in determining defendant's probable cause for making the criminal complaint, the jury should consider only such facts as were known to defendant at the time he made the complaint, and that they should not consider any facts not then known to defendant which tended to, or which would, exonerate plaintiff from the charge of theft, was not misleading as limiting the jury on the question of defendant's malice to facts known by him when instituting the criminal proceedings, when as a fact he appeared and testified against plaintiff at the trial, after ascertaining facts exonerating plaintiff.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 168–173; Dec. Dig. ☞72.]

7. APPEAL AND ERROR ☞1068—HARMLESS ERROR—INSTRUCTION—CURE BY VERDICT.

The refusal to charge in such suit that the jury should consider plaintiff's fees in defending himself against the criminal charge as an element of damages was harmless, where the jury by finding for defendant impliedly found that the essential elements of malicious prosecution, to wit, malice and want of probable cause, were not proved.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. ☞1068.]

8. APPEAL AND ERROR ☞739—ASSIGNMENT OF ERROR—DUPLICITY.

An assignment of error that the court erred in refusing to give plaintiff's special charges numbered 1 and 2 cannot be sustained regardless of the correctness of either special charge standing alone, since such assignment must be considered as duplicitous, or as complaining that the court erred in refusing to give both charges.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3034–3036; Dec. Dig. ☞739.]

Appeal from District Court, Bowie County; W. T. Armistead, Judge.

Action by Hugh Rainey against W. M. Old. Judgment for defendant and plaintiff appeals. Affirmed.

J. S. Crumpton, of Texarkana, and O. B. Pirkey, of New Boston, for appellant. Johnson & Boswell, of New Boston, and C. A. Wheeler and J. Q. Mahaffey, both of Texarkana, for appellee.

HODGES, J. The appellant sued the appellee for damages for an alleged malicious prosecution. This appeal is from a judgment in favor of the defendant below. The petition alleged, in substance, that in October, 1912, the defendant maliciously and without probable cause filed in the justice court in Bowie county a complaint, charging the plaintiff with the theft of a bale of cotton, and thereafter appeared and prosecuted the suit. The filing of this affidavit and the appearance of the defendant as a witness

for the state and the final discharge of the plaintiff are admitted; but it is claimed in defense that, under the facts as known to the defendant at the time the complaint was filed, there was good cause for believing that the plaintiff had committed the offense of theft as charged, and that the defendant acted in good faith and without malice. The facts show that Rainey, the appellant, for the year 1912 had leased a tract of land from Mrs. Mollie Sturgeon which contained more land than he could cultivate; that Mrs. Sturgeon had authorized him to sublet a portion of this land to others. The second paragraph of the petition contains the following language:

"That during the spring of the year 1912 the plaintiff, Hugh Rainey, as the tenant in possession of the said farm and also as the agent of the said Mrs. Mollie Sturgeon, the owner thereof, did sublet a certain portion of said farm, to wit, about 30 acres of land, to one Wood Richardson, who was to plant and cultivate a crop, and this plaintiff was to receive one-fourth of all the cotton and one-third of all corn raised thereon by the said Wood Richardson, said amount being the rents contracted to be paid by the said Wood Richardson to plaintiff as rents for the use of said premises for the said year."

It is further alleged that in August following Wood Richardson, the tenant above referred to, abandoned the crop and premises, and removed from the state without paying the rents and advances due; that the plaintiff had, prior to that time, furnished supplies to the value of $16.95 to Richardson to enable him to make and gather a crop on the rented premises; that in order to protect himself plaintiff gathered about 1,500 pounds of the cotton, had it ginned and baled, and subsequently sold it for the sum of $55; that the money received from this sale was deposited in a local bank as follows: $13.75 to the credit of Mrs. Sturgeon for rents; $16.95, together with $8.70, to the plaintiff's credit for his advances and for services in gathering the crop; and $15.60 to the credit of the defendant, Old. It is averred that the defendant, knowing these facts, did maliciously and with the intent to injure the plaintiff make the complaint, charging plaintiff with the theft of that bale of cotton. The testimony was undisputed that Richardson rented 38 acres of land, a part of the Sturgeon farm, for the year 1912, for which he was to pay the usual third and fourth of the crops grown, and that he made this contract with Rainey. It is further shown that in the early part of the year Richardson became indebted to Rainey in the sum of $16.95 for supplies and money. It is also undisputed that the defendant, Old, sold Rainey a team, and furnished him supplies, amounting in the aggregate to between $150 and $200, to enable him to cultivate the rented premises, and that Old took as security a mortgage on the crop of Richardson and the stock sold. During the latter part of August or the first of September, after the crops were grown, but before harvesting began, Richardson announced his purpose of moving to the state of Louisiana, and had a settlement with Rainey, which resulted in the admission by Richardson of a debt due Rainey of $16.95. The evidence shows that before leaving the state Richardson entered into a contract with one Tom Collins, whereby he engaged the latter to gather the cotton crop at the customary price for such work and to turn the cotton over to the defendant, Old. Rainey objected to Collins' going on the premises and taking possession of the crop, but he and Old subsequently agreed upon one Edgar Graham as the party who should take charge of the crop and gather it. According to the testimony offered by Old, when Richardson left he was notified of that fact by Rainey, who suggested that he (Old) take charge of the crop. This is disputed by Rainey. They both agree, however, that Graham was subsequently agreed upon as the proper party to gather the cotton, that Graham did gather a part of the first bale, and Rainey and his family a part. According to the testimony offered by Old, Rainey was hired to pick the cotton. This is also disputed by Rainey. But it is undisputed that Old paid Graham for his services in gathering the crop, and tendered payment to Rainey. Old says he employed Rainey to haul the bale of cotton to the gin. It was carried to the gin by Rainey the next day after this conversation took place. At Rainey's instance the cotton was branded "Rainey & Richardson." Upon learning that fact, Old objected, and an altercation took place between him and Rainey, resulting in some bad feeling. The next day Rainey, without the knowledge or consent of Old, carried the cotton to market and sold it and deposited the money in the manner set out in his pleading. Upon learning that Rainey had sold the cotton, Old consulted the assistant county attorney, with the view of prosecuting Rainey for disposing of mortgaged property. He was informed that such a prosecution would not lie; that the facts did not show that offense. The assistant county attorney informed Old that if Rainey was guilty of anything, it was theft. Old testifies that the attorney advised him to make a complaint to that effect. The attorney denied having given any such advice. After the complaint had been made, Rainey was arrested in a formal way, and after the cause remained upon the docket two or three weeks, an examination was held and he was discharged. That ended the prosecution.

[1, 2] After a preliminary statement and definitions, the court gave as a part of his instructions to the jury the following:

"(7) You are further charged as the law applicable to this case that before the plaintiff can recover, the burden is upon him to show, by a preponderance of the evidence, that there was not a probable cause for the making of the

said complaint by the defendant charging the plaintiff with theft, and without probable cause the said defendant, W. M. Old, was actuated by malice, with intent to injure the plaintiff, Hugh Rainey, when he made said complaint against him, charging him with the theft of the cotton, and prosecuted him therefor, if he did so.

"(8) In this connection you are further charged that malice cannot be inferred from the fact that a complaint was made by the said W. M. Old against the said Rainey, nor can the want of probable cause be inferred from the discharge of the plaintiff, Hugh Rainey, on the charge of theft, because both the want of probable cause and malice, as above defined, must be established by the plaintiff by a preponderance of the evidence before he can recover.

"(9) If under the foregoing instructions you are satisfied from a preponderance of the evidence that the defendant, W. M. Old, was actuated by malice in making the complaint of theft and prosecuting the same as alleged, and the same was without probable cause, the plaintiff is entitled to recover such actual damages," etc.

The appellant complains that these instructions were erroneous in imposing upon him the duty of establishing "malice and an intent to injure" in addition to the want of probable cause. The argument is made that "malice and an intent to injure" may be inferred from the absence of a probable cause for the prosecution, and for that reason proof of both malice and the absence of probable cause is not required. The rule, as stated in the cases referred to below, imposes upon the plaintiff, in actions of this character the burden of proving both the absence of a probable cause for the prosecution and malice on the part of the prosecutor. Griffin v. Chubb, 7 Tex. 603, 58 Am. Dec. 85; Ramsey v. Arrott, 64 Tex. 320; 26 Cyc. pp. 23, 24, 50 and 51, and cases cited in notes.

It is true, as stated by counsel for appellant, malice may be inferred from the want of probable cause; but the want of probable cause is merely the basis for an inference of fact, and malice does not follow as a matter of law.

In the seventh paragraph quoted above the court tells the jury that the burden rested upon the plaintiff to prove "that the defendant was actuated by malice with intent to injure," etc. The intent to injure is an essential part of the definition of malice, and the court had, in substance, so instructed the jury. While the language used amounts to legal redundancy, it is not likely that it so misled the jury as to cause the rendition of a verdict against the appellant. It is hardly probable that the jury were convinced that the defendant was actuated by malice, but that he had no intent to injure. In the ninth paragraph, where an application of the law is made to the facts, the jury were told to find for the appellant if they believed the defendant was actuated by malice in making the complaint, and that the same was without probable cause, omitting the words "with intent to injure," which appears in paragraph 7.

[3-5] At the instance of the appellee the court gave the following special charge:

"In this case I charge that the relation of landlord and tenant did not exist between Hugh Rainey and Wood Richardson so as to give Hugh Rainey a landlord's lien on Richardson's crop for the year 1912 to secure advances made to Richardson by Hugh Rainey during said year."

The objection to this charge is:

First, "that the issue as to whether or not the plaintiff had waived his lien for advances was controverted and an issue for the jury; second, that the charge was misleading and liable to confuse the jury in limiting the rights of the plaintiff in said crops to advances only when the uncontroverted proof shows that he had a lien for rents."

The existence or nonexistence of a landlord's lien was, of course, merely collateral to the main issue, and could be considered by the jury only in passing upon Rainey's right to sell the cotton and in viewing the circumstances as they may have appeared to Old when he made the complaint. As the record stands, it was immaterial whether Rainey had a lien upon Richardson's cotton or not, in so far as his legal right to sell it is concerned. If it be conceded that he did have a landlord's lien, he occupied the status of a mortgagee out of possession, and holding under conditions which did not give him the right to assume possession.

Counsel for the appellant contend that Richardson had abandoned the premises and his crops, and that this authorized Rainey, as the landlord, to take possession of both the premises and the crops, and to have the latter gathered and sold. The proposition that the landlord may take possession of abandoned crops and exercise such rights is doubtless correct; but that state of facts does not exist in this instance. The undisputed testimony shows that about the last of August or the first of September Richardson left the premises and moved to another state; but the testimony is equally as conclusive in showing that, before leaving, Richardson contracted with Tom Collins to gather his crop and turn it over to Old. The vacation of the premises by Richardson is not, of itself, equivalent to an abandonment of the crops. He had a right to place an agent in charge of the crops for the purpose of harvesting them. Collins was prevented from carrying out the undertaking by the opposition of the appellant, who objected to Collins' going on the premises. There is no evidence that Collins was an unfit person, or that there was any just ground for the opposition. The contract between Collins and Richardson was not a subletting of the premises which required the assent of Richardson's landlord, but was a mere contract of employment, Collins to be merely a hired hand, Richardson's representative, and not a tenant on the premises. That the cotton when gathered was by Richardson's order to be delivered to Old was also undisputed. This gave to Old, as a matter of law, the right of possession, subject to such claims as might exist in the hands of other parties. Rainey would have no more right to forcibly and without legal process

take the cotton from the possession of one to whom Richardson had consigned it than he would to take it from Richardson. It is true that the issue as to whether or not Rainey had waived whatever lien he may have held for the advances made to Richardson was controverted, and it may be that the court invaded the province of the jury as to that fact. But had the court told the jury that Rainey had no legal right to the possession of the cotton, he would not have exceeded the proof.

Counsel for appellee contend that both the pleadings and the evidence show that Rainey was not the landlord of Richardson. They point to that portion of the pleadings which we have quoted, wherein Rainey alleges that he rented as the agent of Mrs. Sturgeon. They also refer to the following portion of Rainey's testimony:

"I rented to him, Richardson, as the agent of Mrs. Sturgeon, 38 acres of land for him to work that year. Our agreement was that he was to have those 38 acres. I was the agent for that land for Mrs. Sturgeon, because I had rented the land from her and had to see after it. In renting for her I was her agent."

This, it is contended, shows conclusively that Rainey rented to Richardson for Mrs. Sturgeon and as her agent. If that be true, then he was not the landlord of Richardson. Viewed in either light, we think the assignment should be overruled.

[6] At the instance of the appellee the court gave the following special charge:

"In determining whether or not W. M. Old had probable cause for making the complaint against plaintiff, you can take into consideration only such facts as were known to W. M. Old at the time he made the complaint, and cannot take into consideration any facts not then known to said W. M. Old which tended to exonerate, or which do exonerate, the plaintiff from the charge that he committed theft in hauling the bale of cotton to market and selling the same."

The objection assigned is:

"Because the same is misleading, and the purpose of it is to limit the province of the jury as to the question of malice to the facts in possession of defendant at the time of making the complaint, when the proof shows that, after ascertaining all the facts incident thereto, then some three weeks thereafter he followed up said prosecution by appearing in court and testifying against the plaintiff."

It will be observed that the court limits the jury to the consideration of the facts stated only in determining the issue of probable cause for making the complaint. It places no restrictions upon the jury in considering all the material facts in passing upon Old's conduct in subsequently appearing as a witness in the case. The charge also is confined to the issue of probable cause, and has no reference to malice. It was not contended, in the objection urged before the trial court, that Old acted hastily and without first having used reasonable diligence to ascertain all of the facts which would tend to exonerate appellant. The assignment is overruled.

[7] The appellant also contends that the court erred in refusing to charge the jury to consider attorney's fees paid by Rainey in defending himself against the criminal prosecution as an element of damages. That question is presented in objections to the main charge and in assignments based upon the refusal of the court to give certain special charges requested by the appellant. Inasmuch as the verdict of the jury should properly be referred to a finding that the two important elements necessary to support a suit of this character—the want of probable cause and malice—were not shown, whatever defect there may have been in the charge of the court on the measure of damages is of no importance. It is inconceivable that under the testimony submitted on the trial below the verdict against the appellant should be referred to the failure of the court to affirmatively charge that attorney's fees were recoverable as damages. The contention cannot be sustained.

[8] There are other assignments, complaining that the court refused certain special charges; one, that the court refused to give plaintiff's special charges numbered 1 and 2. Without reference to the correctness of either of these charges standing alone, the assignment cannot be sustained. We must either treat it duplicitous in presenting more than one proposition or question, or as complaining that the court erred in refusing to give both charges. Viewed either way, the assignment cannot be sustained.

The fourth assignment is based upon an incorrect quotation from the record, and the proposition urged is not relevant.

There are other questions presented, not necessary to be discussed.

The judgment is affirmed.

