DAVID BLANKENSHIP V. WILLIAM E. DOUGLAS, AND ANOTHER.

26  225
f92  206

It seems to be well settled that a judgment lien on the land of a debtor is subject to every equity which existed against the land in the hands of the judgment debtor at the time of the rendition of the judgment; and that courts of equity will protect such equities against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate.

The above doctrine is qualified by the registration laws of particular States, prescribing the effect of unrecorded conveyances and mortgages upon the rights of purchasers and creditors.

A resulting trust is beyond the contemplation of our statute of registration respecting the rights of creditors, and will be protected against the legal lien of a judgment creditor or his assignees, although they had no notice of the trust; as they are not in this respect entitled to the preferences over prior equities accorded to *bona fide* purchasers for valuable consideration without notice.

A purchaser at sheriff's sale under execution, who, at the time of the sale, had notice of outstanding equities which existed against the property at the time the judgment was rendered, takes the property subject to such equities and acquires only such rights as the defendant in execution possessed. The opinion is intimated but not authoritatively expressed, that a purchaser at sheriff's sale under execution, without either actual or constructive notice of an unregistered deed or subsisting equity outstanding against the property, would take the property discharged of all claims arising under such deed or equity.

The court is not bound to give an instruction where the effect of it would be to cause the jury to attach too great importance to evidence too meagre to sustain a verdict upon the principle involved in the instruction.

15

Possession, to be equivalent to registration, or in other words to amount to actual notice or reasonable information of the claim of the party in possession, must be open and visible, or at the least, must not be of such a character as is calculated to deceive the public.

APPEAL from McLennan. Tried below before the Hon. John Gregg.

The facts are stated in the opinion.

*McCall & Alexander*, and *R. N. Goode*, for appellant.

*M. D. Herring*, for appellees.

BELL, J. This suit was instituted by the appellees to recover from the appellant and others, a certain lot of ground, with the improvements thereon, in the town of Waco.

It appears from the transcript of the record that at the Fall term, A. D. 1856, of the District Court for McLennan county, one James H. Mullins recovered a judgment for the sum of three hundred and twenty-seven dollars and fifty cents, besides interest and costs, against John J. Blankenship, who was a defendant in this present suit, in the court below. Execution issued on this judgment on the 15th day of December, A. D. 1856 ; which execution was levied on the lot in controversy on the 13th day of January, A. D. 1857, and the lot was sold on the 3d day of March, A. D. 1857 when Mullins became the purchaser. The appellees, Douglas and Herring, purchased from Mullins in the month of September, A. D. 1857. It also appears that John J. Blankenship executed a deed for the lot in controversy to David Blankenship, the appellant, on the 7th day of November, A. D. 1856, which appears to have been previous to the rendition of the judgment in favor of Mullins against John J. Blankenship.

This deed from J. J. Blankenship to the appellant, was proven for registration by one of the subscribing witnesses, on the 7th day of January, A. D. 1857, (which was previous to the levy of Mullins' execution,) and was recorded on the 16th of January, A. D. 1857. It is also shown that the lot of land in question was conveyed to John J. Blankenship by one J. W. McCown on

the 12th day of March, A. D. 1856; and there was some evidence to the effect that the lot and the improvements thereon were purchased from McCown by John J. Blankenship for the appellant, David Blankenship, with the property and funds of David Blankenship, although the deed from McCown was executed to John J. Blankenship. The building upon the lot in controversy was occupied by John J. Blankenship for the usual purposes of merchandizing, until about the time of the rendition of the judgment in favor of Mullins, when he sold his stock of goods to another person; and there was some slight evidence of acts of ownership over the property by the appellant while it was in the possession of John J. Blankenship. This evidence was introduced, of course, for the purpose of showing a possession by David Blankenship, which would amount to " reasonable information" to Mullins of his (David Blankenship's) claim to the property.

In this aspect of the case, the judge below instructed the jury as follows : " If you believe from the testimony that the judgment rendered in favor of Mullins against John J. Blankenship was rendered before the deed from John Blankenship to David Blankenship was recorded, the judgment was a lien on the land in controversy, and the sheriff's sale under it passed the title." The present appellant seems to have relied in the court below both upon his unregistered deed of the 7th of November, A. D. 1856, and such possession as amounted to "reasonable information" of his claim, and also upon his equity growing out of the original purchase from McCown, which he tried to show was made for him and with his property and funds. In support of this latter view, his counsel asked the court to instruct the jury in the following terms : " If the jury believe from the testimony that David Blankenship furnished the money which was to pay for this property, the deed being taken in the name of John Blankenship, his son, raises the presumption that the father intended it as an advancement or gift to John J. Blankenship. But the jury will take into consideration all the testimony with regard to what the intention of the parties was at the time, and if they believe from this testimony that at the time of the trade, (meaning J. J. Blankenship's trade with McCown,) and not at a

subsequent time, the Blankenships both intended that the house was to be really the property of David Blankenship, and not the property of John, they will consider John J. Blankenship a trustee for the father, to the extent of the money paid; and if this be so, John J. Blankenship had the right, upon this consideration, to convey to David Blankenship a good title to the land, unless the jury can find from the evidence that this deed was made subsequent to the judgment being rendered in favor of Mullins. The execution of the deed from J. J. Blankenship to David Blankenship does not operate in this case as an estoppel upon the rights of David Blankenship springing from the resulting trust in his favor, if there was any such resulting trust." There was verdict and judgment for the plaintiffs below, and a motion for a new trial, which was overruled.

The instruction asked by the counsel for the present appellant, on the trial of the case in the court below, was not perhaps drawn with the most perfect accuracy, in view of the law; but it was sufficiently accurate to bring distinctly to the view of the court the proposition that there was an equity in David Blankenship growing out of the circumstances of the original purchase from McCown by John J. Blankenship, which equity was entitled to protection against the lien of the judgment recovered by Mullins. And we are of opinion that the court below, by the instruction given, confined the jury to a view of the case altogether too narrow. It seems to be well settled that a judgment lien on the land of a debtor is subject to every equity which existed against the land in the hands of the judgment debtor at the time of the rendition of the judgment. And courts of equity, it is said, will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate. (4th Paige's Chancery Rep., pages 14 and 15, and cases cited.) This doctrine is qualified by the registration laws of particular States, prescribing the effect of unrecorded conveyances and mortgages upon the rights of purchasers and creditors. And although, in the present instance, the lien of the judgment recovered by Mullins would prevail over the unregistered deed executed by J. J. Blankenship to David Blanken-

ship, on the 7th of November, 1856, unless it were shown that Mullins had "actual notice or reasonable information" of said deed, this is so only by virtue of our statute of the 5th of February, A. D. 1841. (Oldham & White, art. 1731.) If the property in controversy was purchased by John J. Blankenship with the funds of David Blankenship, and for him, then the equitable estate in the land was in David Blankenship, and upon proof of the facts, the land might have been sold under execution for the debts of David Blankenship, and the purchaser could have maintained his action against John J. Blankenship to compel a conveyance of the legal title. This kind of an equity is beyond the contemplation of our statute of registration respecting the rights of creditors. It is true that a purchaser of the estate, under these circumstances, from John J. Blankenship, in good faith, that is to say, without notice, and for a valuable consideration, would take the estate discharged of the equity of David Blankenship. But it is settled that one who acquires a judgment lien, although without notice, is not to be regarded in the light of a purchaser and entitled to a preference over prior equities. (See Hare & Wallace's notes to Leading Cases in Equity, vol. 2, part 1, page 75; and the cases there cited.) It is proper here to call attention to the fact that at the time of the sheriff's sale, on the 3d of March, 1857, David Blankenship's deed was recorded; and it appears from the record that Mullins must have also had actual notice of David Blankenship's claim at the time he purchased. This is remarked, because if the sheriff's sale had been consummated without any notice to Mullins of the equity of David Blankenship, he then perhaps would have occupied the position of an ordinary purchaser, and might have taken the land discharged of every claim, whether arising under an unregistered deed or a mere equity; though upon this point it is not intended to express any authoritative opinion.

These views lead us to the conclusion that the court below erred in not causing the jury to inquire into the equity of David Blankenship growing out of the original purchase from McCown, under proper instructions.

If David Blankenship's claim had rested solely upon his un-

registered deed of the 7th of November, we could not perhaps have held that the court below erred, in view of the evidence in this case, in refusing to give the instruction asked by the counsel for David Blankenship, to the effect that possession in person or by tenant is equivalent to registration, &c. The court is not bound to give an instruction where, as in this case, the effect of it would perhaps be to cause the jury to attach too great importance to evidence too meagre to sustain a verdict upon the principle involved in the instruction. Possession, to be equivalent to registration, or in other words to amount to actual notice or reasonable information of the claim of the party in possession, must be open and visible, or, at the least, must not be of such a character as is calculated to deceive the public.

The judgment of the court below is reversed, and the cause remanded for further inquiry into the facts, under instructions in conformity with this opinion.

Reversed and remanded.