LAND v. JOHNSON. (No. 5714.)*

(Court of Civil Appeals of Texas. San Antonio. Oct. 26, 1916. Rehearing Denied Nov. 22, 1916.)

1. APPEAL AND ERROR ⟨⟩736—ASSIGNMENTS OF ERROR—JOINDER OF SEVERAL MATTERS.

In a landlord's suit against her tenant, defendant's assignment, complaining of the refusal to give special charges and the court's failure to submit defendant's claims for repairs and for actual and exemplary damages for suing out a writ of sequestration, joining separate and distinct matters in violation of the rules, could not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. ⟨⟩736.]

2. LANDLORD AND TENANT ⟨⟩285(5)—RECOVERY OF PREMISES—INSTRUCTION—CONSTRUCTION.

In a landlord's suit against her tenant, the instruction, as to the lease contract in evidence, that under its terms, in case of fire and damage to the premises, the matter of repair was within the discretion of the lessor, and that the question of fitness for occupancy after the fire was solely within plaintiff's determination, and that if she decided the premises to be unfit for occupancy, and not to repair or rebuild, such decision was binding on defendant, and his rights under the lease terminated, did not affirmatively state any rule that the lessor could in bad faith without excuse or justification take advantage of the word "deem" in the lease to arbitrarily terminate it.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1199; Dec. Dig. ⟨⟩285(5).]

3. LANDLORD AND TENANT ⟨⟩285(4)—TERMINATION OF LEASE—FRAUD OF LANDLORD—SUFFICIENCY OF EVIDENCE.

In a landlord's suit against her tenant, evidence *held* insufficient to justify a finding that plaintiff acted fraudulently in electing to terminate the lease, and not to repair after a fire, and merely pretended to deem the premises unfit for occupancy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1197; Dec. Dig. ⟨⟩285(4).]

4. LANDLORD AND TENANT ⟨⟩150(2)—LEASE—ELECTION TO REBUILD.

The clause of a lease that in case of fire the lessee should give immediate notice to the lessor, who should cause the damages to be repaired, but, if the premises were deemed by the lessor to be so damaged as to be unfit for occupancy, "or if the lessor should decide not to rebuild," the lease should cease and rent be paid up to the time of the fire, meant that, if any of the several houses on the premises was completely destroyed, the landlord could elect whether or not to rebuild.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 545; Dec. Dig. ⟨⟩150(2).]

5. LANDLORD AND TENANT ⟨⟩285(5)—QUESTION FOR JURY—CONSTRUCTION OF LEASE.

In a landlord's suit against her tenant, where there was no pleading that a clause of the lease giving the landlord the right to terminate the lease in case of fire was ambiguous, and no evidence was introduced as to what was in the minds of the parties making the contract, the question whether the lease had reference to a fire that should destroy all or practically all of the buildings on the premises, or such a fire as in fact occurred, which substantially injured them, but did not destroy all, could not become a jury question.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1199; Dec. Dig. ⟨⟩285(5).]

6. LANDLORD AND TENANT ⟨⟩285(5)—RECOVERY OF POSSESSION—INSTRUCTION—PEREMPTORY CHARGE.

In suit against a tenant by his landlord, who by the lease had an election to terminate or rebuild in case of fire, where a paragraph of the charge was that, under the admitted facts, the lessor, on a specified date, was the owner of the premises and entitled to possession, and that she was entitled to such a sum for use and occupancy as the jury might find to have been the fair rental value for the time the premises were held by defendant after the specified date, the charge was a peremptory instruction, not only to find for plaintiff for possession, but for the fair rental value, though the first and second paragraphs informed the jury of the reasons relied on by the court in reaching its conclusion.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1199; Dec. Dig. ⟨⟩285(5).]

**7. APPEAL AND ERROR** ⊜⟿1068(3)—**HARMLESS ERROR—INSTRUCTIONS.**

In a landlord's suit against her tenant, where the second, third, and fourth paragraphs of the charge were in effect a peremptory instruction to find for plaintiff for the possession and the fair rental value of the premises from a date until defendant surrendered, and were not objected to by defendant, whether the court erred in giving the first paragraph of the charge, informing the jury of the reasons relied on by him in concluding the lease terminated on the date specified in the third paragraph, was immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4227; Dec. Dig. ⊜⟿1068(3); Trial, Cent. Dig. § 475.]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by William Uehlinger and Annie Uehlinger against Charles Land and another, wherein Anna Uehlinger, under the name of Annie Uehlinger Johnson, filed an amended petition. From a judgment for plaintiff Anna Uehlinger Johnson, defendant Land appeals. Judgment affirmed.

H. D. McDonald and E. P. Scott, both of Corpus Christi, for appellant. Pope & Sutherland, G. R. Scott, Boone & Pope, and Gowan Jones, all of Corpus Christi, for appellee.

MOURSUND, J. William Uehlinger and wife, Annie Uehlinger, on May 11, 1912, sued Charles Land and Mrs. E. P. Cooper, in trespass to try title, for certain real estate in Corpus Christi. At the same time plaintiff sued out a writ of sequestration, upon an affidavit made by plaintiff Annie Uehlinger. The sequestration, upon motion of defendant Land, was quashed on March 13, 1913. On November 2, 1915, said Annie Uehlinger, under the name of Annie Uehlinger Johnson, filed her first amended original petition, having obtained permission to prosecute the suit without being joined by B. O. Johnson, who married her and abandoned her after she was divorced from Uehlinger. She sought to recover rents in the sum of $3,600 per annum, and also $7,200 for every year since the institution of the suit for rents she would have received from a building she was prevented from erecting because of Land's refusal to surrender possession of the premises.

Land pleaded that he had leased the premises from J. W. Stacey, who had sold such premises and assigned the lease to Mrs. Annie Uehlinger Johnson, and that he recognized her as his landlord thereafter; that the lease by its terms was to terminate December 31, 1913; that about November 20, 1911, the kitchen and bake oven on said premises were destroyed by fire; that such fire did not so damage the premises as to make them unfit for occupancy, and under the terms of the lease the landlord should cause the damages to be repaired forthwith; that Mrs. Johnson, although requested to promptly repair the buildings, refused to do

so, whereupon defendant Land, at his own expense, in the sum of $1,400, made the repairs reasonably necessary to place the building in a "usable and tenantable" condition for the uses and purposes for which he had rented the same. He prayed for judgment for such sum of $1,400, and further reconvened for damages alleged to have been caused by the issuance of the writ of sequestration, which he alleged was wrongfully issued. He claimed actual damages in the sum of $250 for a period of nine days during which the sheriff had possession of the premises; also actual damages in the sum of $920 paid out for premiums on the replevy bond given by him; also for $10,000 exemplary damages.

Mrs. Johnson, by supplemental petition, denied that the lease was of the tenor and effect pleaded by defendant Land, and alleged:

"That said lease, among other things, provided that the rental thereof should be payable the 1st day of each and every month, $121.30 per month for each month from date thereof during the year 1910, $141.30 per month each month during the year 1911, $156.30 each month during the year 1912, and $166.30 each month during the year 1913, and that said rent should be paid at the City National Bank of Corpus Christi, Tex., in advance as the same should fall due, and that default for ten days in the payment of any installment should cause said defaulted installment to bear interest at the rate of 10 per cent. per annum from date of such default until paid, and that in case of fire the lessee, the said Chas. Land, defendant herein, should give immediate notice to the lessor, who should thereupon cause the damages to be repaired forthwith, but, if the premises were deemed by the lessor to be so damaged as to be unfit for occupancy, or if the lessor should decide not to rebuild, the lease should cease, and the rent should be paid up to the time of the fire, and that, in case of default in any of the aforesaid covenants or in the payment of any installment of rent, the lessor had the right to declare said lease forfeited; that a fire occurred on said premises on or about the 20th day of November, 1911, and badly damaged and injured the building and improvements of said property, and plaintiff, exercising her right, privilege, and options under said lease, declined to repair said building, and declared said lease terminated, and so notified defendant."

She further alleged that Land refused to pay the rent as it became due, and failed to surrender the premises, although he had agreed to do so, whereupon she had perfected arrangements to erect a large fireproof building, which would have brought her a net income of $7,200 per annum. She denied all allegations to the effect that the writ of sequestration had been wrongfully issued, and that Land had suffered damages by reason of its issuance.

Land replied by supplemental answer, describing the damages to the premises, and alleging:

"That such damages were not of such extent as to justify plaintiff in fairness, reason, and good faith to defendant in declaring said lease forfeited, and the defendant says such refusal of plaintiff to repair such damages, and her said

attempted forfeiture of the lease, was done capriciously and maliciously without just cause or reason, and for the purpose of injuring this defendant and serving her own selfish purposes."

A verdict was returned in favor of plaintiff for the title and possession of the premises, and for $200 per month for 24 months, with interest at 6 per cent. Judgment was rendered in accordance with the verdict.

[1] By the first assignment of error complaint is made of the refusal to give special charges numbered from 1 to 14, inclusive, and of the failure of the court to submit defendant's claims for repairs and for actual and exemplary damages for suing out the writ of sequestration. Appellee objects to the consideration of such assignment on the ground that appellant has therein joined several separate and distinct matters in violation of the rules. This objection must be sustained. Nelson v. Boggs, 177 S. W. 1005; Foster v. Bennett, 178 S. W. 1001; Rainey v. Old, 180 S. W. 923; Browder v. School District, 172 S. W. 152; McConnon v. McCormick, 179 S. W. 275; Killman v. Young, 171 S. W. 1065.

[2] By the second assignment complaint is made of the first paragraph of the charge, which reads as follows:

"As to the lease contract in evidence, you are instructed that under the terms thereof, in case of fire, and damage by reason thereof to said premises, the matter of repair of said premises was within the discretion of the lessor, and that the question of fitness for occupancy after the fire was solely within the determination of plaintiff, and that, if plaintiff decided same to be unfit for occupancy, or not to repair or rebuild, such decision was binding upon the defendant, and his rights under said lease terminated."

The clause of the lease to which this paragraph relates reads as follows:

"That the lessee shall, in case of fire give immediate notice to the lessor, who shall thereupon cause the damages to be repaired forthwith; but if the premises be deemed by the lessor to be so damaged as to be unfit for occupancy, or if the lessor shall decide not to rebuild, the lease shall cease, and the rent be paid by lessee up to the time of the fire."

Appellant contends, in his proposition under this assignment, that the charge informs the jury that the lessor could, in bad faith, without excuse or justification, take advantage of the word "deem" to arbitrarily terminate the lease. No such rule is affirmatively stated in the charge, but it is true the court ignored the issue raised by Land in his first supplemental answer. If it be conceded that the allegations in said answer are sufficient to raise the issue of fact whether plaintiff fraudulently pretended to deem the premises unfit for occupancy, when in fact she considered the same fit for occupancy, we conclude that the evidence raised no such issue, and that a verdict based upon a finding to that effect could not be permitted to stand.

[3] The improvements on the premises consisted of a two-story concrete building, 18 or 20 feet by 45; a small one-story concrete building adjoining the same, sublet by Land, and used as a fruit stand; a gallery at the rear of the two-story building with a stairway leading to its second story; a wooden building 40 feet by 28 feet connected to the gallery, in which building a bake oven was located. The principal business carried on by Land was the bakery business, for which the location and improvements were especially adapted. He also sold canned goods, grain, and hay, which he kept on the first floor of the two-story concrete building. The upstairs part was used for residential purposes. It is undisputed that the wooden building and bake oven were destroyed by the fire; that the upstairs portion of the other building was badly damaged, part of the floor being destroyed, some partitions damaged, and windows on one side destroyed. Plaintiff testified the roof was burned. Land did not specifically deny this, but did not mention it in detailing the damages. The lower floor of the concrete building was injured by water and smoke, and the roof of the one-story concrete building was damaged, but these portions of the improvements were not rendered unfit for occupancy. The lot was valuable, and the buildings old and of comparatively little value. Land testified that two rooms upstairs could have been used after the fire, but that he would have had "to repair that part touched by the fire to have made it habitable." As a matter of fact the upstairs portion was not used from the time of the fire to the time Land surrendered possession. Land had to get another place in which to do his baking. He testified that when plaintiff demanded her building he told her he wanted his shop and for her to build him a shop so he could continue business. Plaintiff testified that Land told her the premises were unfit to do business in, and that it would take about $2,000 to repair the premises, and demanded that she spend such amount. Land did not deny this. Plaintiff refused to rebuild the destroyed building and to repair the other building, and elected to terminate the lease under the provision above copied. Land refused to give possession, and paid no rent after December, but proceeded about March to erect a bake oven and a small hollow tile building, there being a city ordinance prohibiting the erection of wooden buildings, expending the sum of $1,400 for such improvements. He admitted that plaintiff protested "forcibly" against the making of these improvements. There was no provision in the contract authorizing the making of such improvements by the tenant. In view of the above facts, we find that plaintiff deemed the premises unfit for occupancy for the purposes for which they were leased, and that there is no evidence which would justify a finding that she acted fraudulently and merely pretended to deem the premises unfit for occupancy.

[4] We are also of the opinion that the

clause "or if the lessor shall decide not to rebuild" meant that, if any of the houses was completely destroyed, the landlord could elect whether or not to rebuild.

[5-7] Appellant, in stating his objections to the charge in the second assignment of error, contends that the issue should have been submitted to the jury whether that provision of the lease had reference to a fire that should destroy all or practically all of the buildings on the lot, or such a fire as that shown by the evidence. We find no pleading to the effect that said clause was ambiguous, nor any evidence introduced as to what was in the minds of the parties making the contract, and the question could not become a jury question. It appears to us that the court, while apparently stating an abstract proposition of law, based alone upon his interpretation of the clause of the lease contract relating to damage by fire, was in reality stating his conclusion of law based upon the clause of the contract as applied to the undisputed evidence. This, we think, is shown conclusively when the entire charge is considered. Paragraph 2 is to the effect that under the provisions of the lease, in case of default in payment of any installment of rent, the lessor had the right to declare the lease forfeited at her discretion, and to re-enter the premises. Then follows paragraph 3, which reads as follows:

"Under the admitted and undisputed facts of this case, plaintiff is, and was on the 1st day of January, 1912, the owner in fee simple of the lot and premises in controversy herein and possession of the lands and premises described in plaintiff's first amended original petition, and for such a sum of money for the use and occupancy thereof as you may, from the evidence, find to have been the fair and reasonable rental value of said lands and premises for the time the same were held by said defendant Chas. Land, from the 1st day of January, A. D. 1912."

In paragraph 4 the jury is instructed not to consider any of the other issues presented by the evidence adduced, but to confine themselves strictly to the issues submitted in the charge.

The charge really constitutes a peremptory instruction not only to find for plaintiff for the possession of the premises, but for the fair and reasonable rental value of the premises from January 1, 1912, until Land surrendered the same. The court determined that the lease was at an end after January 1, 1912, under the undisputed facts, and so, in effect, informed the jury. Paragraphs 1 and 2 of the charge were unnecessary, and could only serve the useless purpose of informing the jury of the reasons relied upon by the court in arriving at the conclusion that the lease terminated on January 1, 1912, and Land was responsible for the rental value for the time the premises were unlawfully detained from plaintiff. The record fails to disclose any exception by defendant to paragraphs 2, 3, and 4 of the charge, and

it is clear that, in view of the nature of the instructions contained therein, it is immaterial whether or not the court erred in giving the first paragraph. This court has heretofore held that a peremptory charge must be excepted to as other charges. Strong v. Harwell, 185 S. W. 676; McCall v. Roemer, 186 S. W. 409.

As no objection was urged to the peremptory charge, nor to paragraph 2, it was useless to object to paragraph 1, and useless to ask the giving of special charges submitting other issues when no objection was made to paragraphs 3 and 4.

We conclude, therefore, that even if it were conceded that the issue relied upon by Land was raised by the evidence, and that paragraph 1 of the charge incorrectly stated the law applicable thereto, it would be improper to reverse the judgment because paragraphs 2, 3, and 4 of the charge were not objected to by Land, and said paragraphs determine all the vital issues in the case, except that of rental value, and no complaint is made of the jury's finding in that respect.

The judgment is affirmed.

⚭For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes