## C. R. MILLER MFG. CO. v. ROGERS et al.
### (No. 9740.)

(Court of Civil Appeals of Texas. Dallas. Feb. 27, 1926.)

**1. Constitutional law ⊙⟞88, 90.**

Equity will not permit unlawful invasion of inalienable rights guaranteed by Bill of Rights, §§ 8, 19.

**2. Appeal and error ⊙⟞1011(1).**

Trial court's finding on question of fact on disputed evidence is conclusive on appeal.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Suit by the C. R. Miller Manufacturing Company against H. M. Rogers and others. From a judgment dissolving a temporary writ of injunction as to defendant F. W. Coleman, plaintiff appeals. Affirmed.

W. B. Hamilton, of Dallas, and Allan D. Sanford, of Waco, for appellant.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellees.

JONES, C. J. This is an appeal from an interlocutory order dissolving a temporary writ of injunction that had theretofore been granted ex parte on the verified petition of appellant.

C. R. Miller Manufacturing Company, appellant in this cause, is a corporation organized and incorporated for the purpose of operating textile mills in the state of Texas, and has its principal office in the city of Dallas. H. M. Rogers and F. W. Coleman, two of the defendants in the suit below, were brokers, and, during the latter part of the year 1924, and up until June 10, 1925, were partners in such business, operating under the trade-name of Textile Finance Company. F. M. Drake was also a broker, and during the times under inquiry operated such business under the firm name of F. M. Drake & Co. On September 19, 1924, Rogers and Coleman, under their said partnership name, entered into a contract with appellant by means of which appellant contracted to sell and the partnership contracted to buy 14,250 shares of appellant's common stock at the par value of $100 per share, paying therefor $75,000 in cash and the remainder along during the time from the date of the contract to July 1, 1925. Other provisions of the contract show that this contract of sale was

entered into for the purpose of enabling the Textile Finance Company to sell for appellant, as brokers, during said time, the said 14,250 shares of stock, and that the remaining consideration for the purchase of the stock was to be paid as and when sales of said stock were perfected. Other provisions in the contract bound said Textile Finance Company and the individuals composing said firm to sell this stock at $130 per share. Another provision provided that if any terms of the contract should be violated by said company in selling the stock, or if any misrepresentations in reference to the stock were made, either by said company or its agents, appellants should have the right, on notice, to cancel the contract. On October 2, 1924, a supplemental contract was entered into, the important feature of which is that at the expiration of this contract the said Textile Finance Company was to be allowed $20,000 as pay for advertising and placing said stock on the market. At the time this employment began, the Miller Manufacturing Company had issued 35,000 shares of common stock, and this contract for the sale of 14,250 shares of said stock did not include all of the common stock then outstanding, there being left to appellant approximately 1,000 other shares. In the early part of the year 1925 appellant purchased three other textile mills and increased the said stock to $6,000,000, or a total issue of 60,000 shares, making approximately 20,000 other shares not included in this said contract.

Differences arose between the contracting parties, and, on the 2d day of July, 1925 Rogers and Coleman filed suit in the district court of Dallas county against appellant praying for damages in a large sum for an alleged breach of their said contract. The nature of the breach claimed is not made to appear by the pleadings in this case.

On July 3, 1925, appellant filed this suit against Rogers and Coleman, as individuals and as a firm doing business under the trade-name of Textile Finance Company, and against the said Drake, for damages because of alleged defamatory conduct and publications in reference to appellant's said stock, and in which a temporary writ of injunction was sought restraining the parties from carrying out an alleged conspiracy formed between them to depreciate the value of said stock by methods alleged in the petition. The ultimate result to be obtained by said defendants in this suit is alleged to be a coercion of appellant into making a contract with Rogers and Coleman to sell its new issue of stock. It is not deemed necessary to more fully state the pleading of appellant, in view of the disposition we shall make of this case. A very sweeping temporary writ of injunction was granted by the judge of said district court on the presentation of the petition against each of the parties named as

---

⊙⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

defendants. Coleman and Drake each filed answer, in which the allegations of the petition were specifically denied.

Coleman also filed a motion to dissolve, which motion was heard by the court, and, on December 3, 1925, a judgment was entered dissolving the injunction as to him. At this hearing it was made to appear that appellant and Rogers had compromised and settled the matters at issue between them as reflected by the two suits above mentioned, and on this hearing no appearance was made by Rogers, and no judgment is sought against him. It was also made to appear that appellant and Drake had compromised and settled their differences, and Drake did not appear as a litigant on the hearing of said motion, and no judgment is sought against him. At the time of this hearing it appears from the record that Coleman is the sole party plaintiff in the suit of July 2, 1925, and the sole party defendant in the suit of July 3, 1925, and is the sole appellee herein.

[1] On the hearing of the motion to dissolve appellee called in question, both by general demurrer and by various special exceptions, the sufficiency of the allegations in the petition to authorize the equitable relief sought by appellant, and this contention is urged in this court. The basis of this contention is the following portion of section 8 of our Bill of Rights:

"Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press."

It is claimed by appellee that the facts alleged in appellant's petition do not warrant the alleged conclusion that it was the threatened victim of a conspiracy formed by appellee and his codefendants for the purpose of coercing and intimidating it into doing the things alleged to be desired by this appellee and his said codefendants; that such allegations, when analyzed, show, at most, only threatened publication of libelous matters, against the doing of which a court of equity is powerless to grant relief by injunction, because of this constitutional guaranty of the liberty of speech. This contention calls for a construction of this clause of our Constitution and of appellant's petition.

In discussing this constitutional guaranty of the liberty of speech and the freedom of the press, our Supreme Court, in Ex parte Tucker, 220 S. W. 75, 110 Tex. 335, said:

"The theory of the provision [the one quoted above] is that no man or set of men are to be found, so infallible in mind and character as to be clothed with an absolute authority of determining what other men may think, speak, write or publish; that freedom of speech is essential to the nature of a free state; that the ills suffered from its abuse are less than would be imposed by its suppression; and, therefore, that every person shall be left at liberty to speak his mind on all subjects, and for the abuse of the privilege be responsible in civil damages and subject to the penalties of the criminal law."

This court, in the case of Strang v. Biggers, 252 S. W. 826, in discussing this said section of our Constitution, said:

"The purpose of this section is to preserve the liberty of speech and the freedom of the press, and to inhibit a court of equity from supervising one person's opinion of another or from dictating what one person may say of another, but, at the same time, to hold all persons accountable for the misuse of this right of free speech. While it is thus guaranteed that this privilege shall be free from all restraining orders that could emanate from a court of equity, still responsibility for the abuse of the privilege is made just as emphatic."

The above quotations, we think, unquestionably announce the proper construction to be given to this constitutional provision. Certainly a citizen of Texas would not be free to publish whatever he will on any subject, if there be a recognition of the power of a court of equity to silence him by making him the object of its writ of injunction, subject to be punished for contempt if he undertook to exercise this freedom. It is impossible to conceive the idea that such citizen has an absolute right to publish what he pleases and, at the same time, allow a court of equity the power to prevent him from doing so. There are certain inalienable rights that also have constitutional guaranty of this state, to wit, the right to follow any of the common occupations of life and the right of security in the possession of property. Section 19, Bill of Rights; Hawks v. Yancey (Tex. Civ. App.) 265 S. W. 233. When properly construed, neither of these constitutional guaranties are in conflict with or encroach upon the other, and a court of equity will not permit the unlawful invasion of these inalienable rights by means of an unlawful conspiracy, formed for the purpose of either intimidation or coercion, any more than it will lend its powers to restrict the freedom of speech.

This court, through Associate Justice Looney, in Hawks v. Yancey, supra, said:

"The rights protected under this section of the Bill of Rights lie at the very foundation of civil government. The freedom of speech guaranteed by section 8, and the right to life, liberty, property, privileges, and immunities, guaranteed by section 19, are not antagonistic or repugnant, nor should they be construed as destructive of each other; they were intended to operate harmoniously, and neither was designed nor should be used as a hiding place for wrong, injustice, or crime."

In Ex parte Tucker, supra, the court said:

"Equity will protect the exercise of natural and contractual rights from interference by attempts at intimidation or coercion. Verbal

or written threats may assume that character. When they do, they amount to, conduct, or threatened conduct, and for that reason may properly be restrained."

In the case of Strang v. Biggers, supra, the court said:

"Appellant has cited a number of cases in which courts of equity had by injunction restrained parties from indulging in verbal or written threats when same amounted to intimidation or coercion, and prevented those against whom they were directed from exercising their natural or contractual rights; also cases in which parties had conspired together to destroy the good name and the property rights of another and, in furtherance of such conspiracy, were circulating libelous publications. It was the act and conduct of the parties in these cases that called for the restraining power of a court of equity and not the abuse and violation of the right of freedom of speech."

It could not be said that a citizen of Texas would be secure in the possession of property, if the restraining .hand of a court of equity could not be laid on those who form an unlawful conspiracy to destroy such property, or who attempt by intimidation or coercion to destroy freedom of contract in reference to its use.

[2] The trial court, as shown by the rulings on appellee's exceptions, evidently concluded that appellant's allegations were sufficient to bring this case within the last rule announced, but, as shown by the judgment entered, evidently was of the opinion that the evidence adduced by appellant in support of these allegations, when considered in connection with the evidence offered by appellee, disproving such allegations, did not warrant the court in granting the relief for which appellant prayed. For the purpose of a disposition of this case we will therefore assume that appellant, by its allegations, made a case of threatened coercion and intimidation, which, if sustained by proof, would have warranted the issuance of the temporary writ of injunction.

The question then is, did the court err in dissolving the injunction that had theretofore been granted ex parte? We do not think so. While the evidence of appellant established the existence of the facts alleged in the petition, the evidence offered by appellee clearly exonerated him from the commission or threatened commission of the acts so alleged. It therefore became a question of fact on disputed evidence for the trial court to decide, and, having found against appellant, this court must accept such finding as an established fact in this case.

It is our opinion that no abuse of discretion is shown by the trial court in entering the order dissolving the said writ of injunction, and that this case should be affirmed.

Affirmed.