## SENTER v. DIXIE MOTOR COACH CORPORATION. *

### No. 11360.

Court of Civil Appeals of Texas. Dallas.

Nov. 26, 1933.

Rehearing Denied Jan. 20, 1934.

*For dissenting opinion on second denial of rehearing, see 68 S.W.(2d) 1117.

E. G. Senter, Sr., of Dallas, for appellant.

Raymond E. Buck, of Fort Worth, and Seay, Malone & Lipscomb, of Dallas, for appellee.

BOND, Justice.

Appellant, E. G. Senter, Jr., brought this suit against appellee, Dixie Motor Coach Corporation,, upon a written contract, leasing a one-story brick building, situated in the city of Dallas, "to be occupied as a garage and motor bus depot and not otherwise," for a term of five years, from January 1, 1929, to December 31, 1933, at a stated rental of $180 per month, payable in advance. The lease provides that "the lessee shall, in case of fire, give immediate notice to the lessor, who shall thereupon cause the damages to be repaired forthwith, but if the premises be by the lessor deemed so damaged as to be unfit for occupancy, or if the lessor shall decide to rebuild or remodel said building, the lease shall cease and the rent be paid to the time of the fire."

Appellant went to trial on pleadings fully disclosing the contractual relationship of the parties, the fire, and extent of damages, and alleged that immediately after the fire he advised appellee that "he deemed the property suitable for occupancy and would forthwith repair the premises in as good condition as before the fire within a few days." Appellant further alleged that appellee refused the offer to repair, and, as evidence of such refusal, by letter gave him formal notice that the premises were destroyed, quoted the fire clause of the lease contract, advised him that it deemed the lease terminated, and requested a return of the unearned rental for the remainder of the month of April, 1930. Appellant further alleged that the fire clause of the contract does not authorize cancellation by appellee, and its attempt to do so is in contravention of its terms and would not be recognized by appellant. Thus, from an

analysis of the petition, it appears that appellant raises a controversy over appellee's construction of the contract and the extent of the fire, being an anticipatory renunciation or breach by appellee, and, at the same time, refuses to accept it as such, elects to perform the repair covenant and hold appellee to a strict compliance with the terms of the contract.

Appellee urged two principal defenses to the cause of action: (1) It pleaded the fire clause of the lease, and alleged that said premises were so damaged by fire as to be wholly unfit for occupancy and were in such condition as a result thereof that it could not be restored to a fit condition by ordinary repairs, such as could be made without unreasonable interruption of appellee's business, and that appellant had unreasonably and arbitrarily declined to consider said lease terminated; and that (2) if appellant intended to enforce the terms of the lease, it was his duty to immediately after the fire begin work on said premises and forthwith to restore same to its original condition and to make diligent effort to rent same to a suitable tenant; that for a period of more than eleven months, from the date of the fire to the date of trial of this cause, no effort has been made to restore the premises to a condition where appellee could use same for the purposes stipulated in the covenant.

At the close of the evidence, the trial court instructed a verdict in favor of appellee and against appellant; hence this appeal.

■ The undisputed facts leave no room for a question of fact to be submitted to the jury. The extent of the damage is itself the controlling factor in a correct determination of the law question presented on this appeal, its application, and the application of the quoted fire clause. There is no material difference between appellant and appellee as to the facts concerning the fire, the extent of the damage, and the necessary repairs. The subject-matter of the lease was damaged; the entire roof was destroyed, the north wall burned completely out, all of the posts supporting the roof and the trusses, rafters, and all wooden portions of the building, and the electrical wiring were burned, and in the three remaining walls sections of brick were completely knocked out and the walls cracked and broken. The only unscathed portion of the building was the cement floor. The necessary repairs were to build one entirely new wall, restore the damage done to the other three walls, put in new center posts, a new metal lathe, and plastered ceiling, install a new roof, and completely rewire the building. Certainly the premises were rendered unfit for the purposes for which appellee leased it, and it could not be restored by ordinary repairs, and, in our opinion, the fire created a condition necessitating the reconstruction or remodeling of the building.

■ We do not assent to appellant's proposition that the stipulation in the executory contract that the right to terminate is applicable only to the lessor. It is for the benefit of the lessor and the lessee. Every contract must be given a reasonable construction. 10 C. J. 315. It is not reasonable to suppose that appellant may deem a building fit for occupancy when, in fact, it is not, or declare a reconstruction or remodeling of the building a repair job. The contract bears no such construction. The terms of the contract impose an obligation on the lessor on notice by the lessee "to cause damages to be repaired forthwith," and relieve him of the duty to rebuild or remodel where the damages are such that the premises are unfit for occupancy. If the building was suitable for occupancy for the purpose for which it was leased, then the lessor could not deem it unfit for occupancy by taking advantage of the word "deemed" in the contract. Land v. Johnson (Tex. Civ. App.) 189 S. W. 337. Nor could the lessor arbitrarily deem the premises fit for occupancy when in fact the same was unfit for occupancy. It is a settled rule of law that the destruction of a building being so complete that same could not be used for the purposes for which it was leased renders such premises unfit for occupancy. As stated in the case of Wolff v. Turner, 6 Ga. App. 366, 65 S. E. 41, "The premises become 'untenantable,' so as to authorize the tenant to quit the premises and cease paying rent, when as a result of fire the building is damaged to such an extent that it is unfit for carrying on the business * * * and cannot be restored to a fit condition by ordinary repairs, such as can be made without unreasonable interruption of the business of the tenant."

■ It is apparent from the contract that the parties' obligations are based on the continued existence of the subject-matter of the contract, a brick building and not the land, suitable for occupancy of a garage and motor-bus terminal. Thus, where the contract relates to the specific thing, the condition is implied by law that the impossibility arising from destruction, so as to unfit it for the purposes intended by the parties, excuse the performance, and the mere fact that the contract in terms imposes the determinative fact for the cessation of the contract on one of the contracting parties, to the exclusion of the other, does not authorize an arbitrary and unreasonable decision.

The contracting parties in advance undertook to control a situation of this sort. The fire clause of the lease clearly provides for such situations, viz.: (1) If the premises were not in fact rendered unfit for occupancy, but were merely partially damaged, then the lessor could repair forthwith and the lease continue; (2) if the premises were damaged to such an extent that the lessor, in good faith, deemed them unfit for occupancy, he

could so declare and terminate the lease; and (3) if the premises were so damaged as to necessitate a rebuilding or remodeling, and lessor decided to rebuild or remodel, that would terminate the lease. So also the efficacy of the lessee to terminate the lease is provided. If the premises are only partially damaged and can be restored by ordinary repairs, such as can be made without unreasonable interruption of the lessee's business, the lessee may not terminate the lease; it is relegated to a cause for damages against the lessor for the refusal to make the repairs.

Appellant contends that appellee breached the lease contract and relieved him from any further duty to make repairs in the premises. The positive refusal to perform a contract is certainly a breach of it, but the mere assertion of a party that he will not perform an executory contract is not in itself sufficient to constitute a breach, nor will a controversy over the terms of a contract, and the extent of damage to the subject-matter, or the construction to be placed upon them, be deemed such a renunciation or abandonment as will authorize the other party to treat the contract as breached. Beaumont Cotton Oil Mill Co. v. Sanders (Tex. Civ. App.) 203 S. W. 372. So, in the case at bar, the building was occupied by appellee for the limited purposes for which it was leased, and the rent, under the terms of the contract, was paid in advance; thus appellee had no covenant to perform under the contract until another rent installment became due. Soon after the fire, appellee, through its agent, wrote appellant, quoted the fire clause of the contract, and concluded with the expression that, "Under this provision of the lease and the damages done to the premises, we deem our lease contract with you to be terminated, and demand a return of the unearned rental." A few days later, appellee's agent wrote to appellant again, reviewed the controversy, and stated in terms, "We sincerely hope that you will take the same view of the provisions of the lease as we do, and which we believe must be inevitably interpreted in the manner which we have stated to you."

In the case of Kilgore v. N. W. T. Baptist, etc., Ass'n, 90 Tex. 143, 37 S. W. 598, the court held that the mere notice of an intention to breach a contract in the future at a time when the contract is in the course of performance, and is actually being performed, is not sufficient to justify the other party to the contract to declare the contract breached. This announcement is also followed in the case of Hardeman-King Lumber Co. v. Hampton Bros., 104 Tex. 585, 142 S. W. 867, 868, in which is stated: "The evidence was sufficient to justify the conclusion that defendants in error intended to abandon the contract, but the evidence is uncontroverted that they were engaged in performing the work under the con-

tract. The intention or threat to quit did not constitute a breach of the contract, and the plaintiffs in error, having refused to proceed with their part of the contract, had no right of action against Hampton Bros."

Applying these principles here, appellee, having fully complied with the lease, up to the time of the fire, the most that could be said of its declarations would be that it was its intention not to occupy the premises on account of the damaged condition of the building. Such asserted intention is not sufficient to release appellant from a compliance with the mandatory provisions of the lease; i. e., "in case of fire to repair the damage forthwith."

If in fact the declarations of appellee, as here contended by appellant, be interpreted so as to bring the controversy under the doctrine of an anticipatory breach, then, according to the great weight of authorities, appellant was put to the election to treat the contract as ended, and maintain an action at once for the damage occasioned by the breach; or, if appellant treats the contract as still binding, as evidently he does, he must abide by its terms and wait until the time arrives for its performance, and bring an action on the contract for the breach. The rule is the same whether the contract is wholly executory or has been partially executed. He cannot keep the contract open and not remain subject to his obligations under it. As held in Foss-Schneider, etc., Co. v. Bullock (C. C. A.) 59 F. 83, 87: "It is true that, where a contracting party gives notice of his intention not to comply with the obligation of his contract, the other contracting party may accept this as an anticipatory breach of the contract, and sue for damages without waiting until the time mentioned for the completion and fulfillment of the contract by its terms; but, in order to enable the latter to sue on such an anticipatory breach, he must accept it as such, and consider the contract at an end. If he elects to consider the contract still in force, he cannot recover thereafter without performing all the conditions of the contract by him to be performed. These principles are well settled, and there are decisions by the supreme court of the United States which leave no doubt upon the subject. (Citing authorities.) * * *" See, also, 6 R. C. L. 1026, which reads: "The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all his own obligations and liabilities under it, and enables the other party, not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of

any supervening circumstances which would justify him in declining to complete it."

■■ The record reflects that appellant refused to accept or recognize any attempt of appellee to terminate the lease, and expressly elected to insist upon its performance. In so many words, appellant advised appellee that "The clause of the contract quoted by you does not authorize cancellation of the contract by lessee and no attempted cancellation by it will be recognized by the owner." Therefore such election imposed upon appellant the duty to restore the premises and to tender them to appellee in their restored condition. It is undisputed that he has never restored the premises. It is elementary that a defaulting party to a contract cannot maintain an action against the other party for a breach.

We conclude, therefore, that the trial court was fully authorized, under the admitted facts disclosed in this record, to peremptorily instruct a verdict for appellee. Judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

On rehearing, appellant contends that the evidence reveals a substantial difference as to the extent of the damage and the repairs necessary to be made to the lease premises, and that such difference raises issues of fact for a determination of the jury; thus, that the trial court was without authority, as a matter of law, to sustain appellee's motion for an instructed verdict, and that this court erred in holding that the undisputed facts leave no room for a question of fact to be submitted to the jury.

It is evident that this case was tried in the court below and reaches this court on the basic contention that either appellant or appellee should have received an instructed verdict. On the trial of the case, after the conclusion of the testimony, both sides moved the court for an instructed verdict. The court peremptorily instructed a verdict for appellee and submitted to the jury a written charge, to which appellant presented no exception and offered no special issues, embodying the idea of differences in the extent of damages and the necessary repairs, as contended here. Thus the conclusion is reached that appellant did not consider the extent of such damages and repairs as becoming controverted issues, or that the record reveals other than a question of law.

Under the practice statutes involved (article 2184), it is made the mandatory duty of a trial judge, "unless expressly waived by the parties," to deliver a written charge to the jury (article 2189); the charge may be general or on special issues at the discretion of the court, in the absence of request by either party for special issues; and (article 2185) the court's charge must be prepared, submitted to counsel, and reasonable time given them to examine and make objections before it is read to the jury, and "all objections not so made and presented shall be considered as waived."

■ Thus it is the settled law in this state that a party may waive an issue, upon which he relies for recovery or defense, by not requiring its submission and declining to object to the charge of the court before it is read to the jury; in such cases the issues are abandoned and the vice in the charge is expressly waived. We are of the opinion that, if the evidence raises controverted issues of fact, as here contended by appellant, the record discloses an abandonment of such issues, and the case rests on a question of law. Interpreting the contest in the light of the evidentiary disclosures as to the extent of the damages, which, in the absence of objection to the instruction of the court, or request for special issues, the issues are "deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding." Article 2190 as amended by Acts 1931, c. 78, § 1 (Vernon's Ann. Civ. St. art. 2190). Under the decisions, it must be presumed that the trial court found all disputed fact issues in favor of appellee to support the judgment rendered. Such findings are necessarily conclusive, unless there is no evidence to support such findings. Mueller v. Bobbitt (Tex. Civ. App.) 41 S.W.(2d) 466; Miller Mfg. Co. v. Rogers (Tex. Civ. App.) 281 S. W. 596; Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447; Wingart v. Baxter (Tex. Civ. App.) 30 S.W.(2d) 522. Appellant's brief does not disclose an assignment predicated on the failure of the trial court to submit special issues; thus the appellate court may not consider such failure when not brought to its attention in the manner provided by law. The failure is not a fundamental error, such as would authorize this court to reverse the judgment of the lower court. Appellant's motion for rehearing is overruled.

Overruled.