## ALEXANDER CO. v. FIRST NAT. BANK OF LAGRANGE.

### No. 8708.

Court of Civil Appeals of Texas. Austin.

July 6, 1938.

Rehearing Denied Sept. 21, 1938.

Wm. O. Bowers, Jr., of Beaumont, and C. C. Jopling, of Lagrange, for appellant.

J. W. Ragsdale, of Victoria, and Moss & Moss, of Lagrange, for appellee.

BAUGH, Justice.

The parties will be designated as appellant and appellee. Appeal is from a judgment in favor of appellee, plaintiff below, against appellant, based upon an instructed verdict, in a trial to a jury.

The bank brought this suit in trespass to try title to, and for possession of, certain business property in the city of Lagrange, against Jake Alexander, his trus-

tee in bankruptcy, and appellant corporation, claiming title thereto under a sheriff's deed dated August 5, 1936. Jake Alexander filed a disclaimer, his trustee in bankruptcy did not answer, and appellant corporation answered by general demurrer, general denial, and plea of not guilty.

The following facts are not controverted: Said bank obtained a judgment on May 2, 1934, for $19,385.67, against Robert J. and M. N. Peter, as principals, and Jake Alexander as indorser, on a series of notes. Appeal was prosecuted from that judgment by the Peters, and it was affirmed by this court. See Peter v. Bank, 92 S.W.2d 1079. Upon return of the mandate to the trial court, the bank properly filed an abstract of that judgment, caused execution to issue on July 1, 1936, under which the sheriff on July 8, 1936, levied upon the property here involved as the property of Jake Alexander, advertised and sold same as such. It was bid in by the bank, by crediting the amount of its bid on its judgment against Alexander, and deed to said property made to it by the sheriff.

Meantime, however, Jake Alexander, to whom this property was conveyed by warranty deed on March 10, 1928, had, on July 20, 1935, conveyed said property to Alexander Grocery Company, a corporation, reciting in his deed thereto that though title to said property had been taken in his name in 1928, he held same as trustee only for said company, which had paid the purchase money therefor. This deed was recorded in the deed records of Fayette County, on May 2, 1936, prior to the levy of the execution above indicated. There was also of record in said county, prior to such levy of execution, an affidavit made by Jake Alexander on August 20, 1935, stating under oath, as a basis for credit for Alexander Grocery Company, that said property had been bought and paid for by the Alexander Grocery Company, that title thereto had been taken in his name as trustee, but that said property was and had been at all times since its acquisition, the property of said corporation.

After Alexander had conveyed said property to the Alexander Grocery Company, it in turn made an assignment of all of its assets for the benefit of its creditors, and through regular conveyances said property was conveyed to The Alexander Company, appellant here. The only issue presented in this law suit was whether Jake Alexander, or the Alexander Grocery Company, was the owner of said property at the time of the levy of the execution under which the bank claims to have acquired title to it. Two issues are presented on this appeal: First, whether there was sufficient evidence to go to the jury that the Alexander Grocery Company owned the property; and, second, whether under the evidence the Alexander Grocery Company was estopped to assert any title to said property.

In passing upon the first issue, it has been repeatedly held that in doing so, we must disregard the evidence on behalf of the appellee, and look only to that adduced on behalf of appellant. Applying this well settled rule the following appears: It is uncontroverted that the entire purchase price for said property was paid by the Alexander Grocery Company; that it paid all insurance, taxes, upkeep, repairs, and all other expenses incurred in connection with said property, from the date it was conveyed to Alexander in 1928 up to the time that corporation ceased to do business; that though Jake Alexander, holder of the legal title, made lease contracts on said property, and rendered it for taxation in his name, he was at the time Secretary-Treasurer and General Manager for said corporation; that though the corporation furnished the entire purchase price for said property, Jake Alexander at no time executed any obligation to the corporation for the amount of such purchase price nor was charged any interest on such sum. The evidence further showed that there were carried on the books of the corporation various accounts, including a real estate account of the corporation, a personal account of Jake Alexander with the corporation to which was charged all his personal indebtedness to the corporation, moneys drawn by or paid to him personally from the corporation's funds, etc. There was also carried on the corporation's books, as a separate and distinct account, one with "Jake Alexander (Haase Building)," same being separate and apart from his personal account, to which was charged only the cost of said building, the insurance, repairs, taxes, depreciation, etc., all of which were paid out of funds of the corporation; and to which was credited all rents and revenues derived from said property, and which sums were manifestly deposited as the funds of the corporation, and not as the funds of Jake Alexander. In addition, the bookkeepers who kept the corporation's books testified that this was a method of

bookkeeping in the nature of a special account to segregate this property from the other property of the corporation; and that same was not considered nor treated as the individual account nor the individual property of Jake Alexander. Jake Alexander also testified that the corporation, of which he was general manager, then engaged in the wholesale grocery business, contemplated at the time he purchased said property, engaging also in the retail trade; and that said property was purchased by him, after discussing the matter with other directors, for the corporation, to be used by it for that purpose; that he merely took title thereto in his own name for convenience; that the account carried on the books of the corporation separately as to this property was for the purpose of separating it from other properties bought in other places by his brothers, who were also directors of said corporation and title to which was likewise taken in their names, in trust for the corporation. Manifestly the foregoing, not taking into consideration the evidence to the contrary, was amply sufficient evidence to support a jury finding that the equitable title to said property was in the Alexander Grocery Company and not in Jake Alexander.

■ It is long since well settled that where one purchases land with the money of another and takes the deed in his own name, a trust results in favor of him who furnishes the purchase money. The latter is the equitable owner of the land and the holder of the legal title a mere trustee and holds for his benefit. 42 Tex.Jur., § 6, p. 637, and numerous cases there cited.

■ And it is manifest that the deed from Jake Alexander to the Alexander Grocery Company, recorded on the deed records of Fayette County prior to the levy of said execution, reciting such facts; and the affidavit of Jake Alexander, likewise recorded prior to such levy, reciting that the corporation's money paid for said property and that he merely held the legal title in trust for the true owner, gave constructive notice to the bank of the asserted equities of the corporation prior to the time that it caused such levy to be made. Consequently the bank acquired at the sheriff's sale under execution against Jake Alexander, no greater title than Alexander had at the time. Blankenship v. Douglas, 26 Tex. 225, 82 Am.Dec. 608; John B. Hood Camp Confederate Veterans v. De-Cordova, 92 Tex. 202, 47 S.W. 522; Gar-

rison v. Citizens' Nat'l Bank, Tex.Civ.App., 25 S.W.2d 231, writ refused.

■■ Appellee contends, however, that because the corporation knowingly permitted Jake Alexander to take title in his own name, and over a period of years (from 1928 to 1935) continue to so hold title, render same for taxes in his own name, and rent same in his name, it estopped itself to assert its equitable title as against appellee bank. This contention is not sustained. The bank had constructive notice of the corporation's asserted title to said property prior to the levy of its execution. In fact the legal title had been deeded by Alexander to the corporation prior to such levy. It cannot claim to be an innocent purchaser. Nor do the elements of estoppel exist as against either Jake Alexander or the Alexander Grocery Company, from which the appellant acquired its title. The evidence in this record, which admittedly is clearly related to the facts shown in Peter v. Bank, 92 S.W.2d 1079, shows that appellee bank is in no position to assert an estoppel, if the facts otherwise would warrant an invocation of that doctrine. One of the essential elements of an estoppel is that the one party by his acts, conduct or acquiescence when in duty bound to speak, has misled another and caused him to act to his injury. 17 Tex.Jur., § 15, p. 144.

The debt for which the notes sued upon, and upon which the bank obtained its judgment on which the execution was issued, was the debt of the Peter Company, a corporation. As disclosed by the record on the appeal in that case, 92 S.W.2d 1079, that debt to said bank had grown to an aggregate of approximately $150,000. The obvious inference from the facts there shown is that the Peter Company was insolvent at the time of the execution of said notes. The bank chose to settle that debt by taking the personal notes of two of its stockholders for the aggregate sum of $50,-000, or one-third of the debt, $25,000 of which Alexander indorsed as surety. So far as the record shows, merely as an accommodation. There is no contention made, nor evidence to show, that at the time the bank settled with the Peter Company, and accepted said notes in satisfaction of its debt, that either the Alexander Grocery Company, or Jake Alexander, owed the bank anything; or that either of them received any benefits from such settlement; or that either was in any manner liable for any part of the Peter Com-

pany debt. Nor was it shown that the bank at the time it accepted said notes, a part of ·which Alexander indorsed as surety, made any inquiry of Alexander or of the corporation with reference to the ownership of said property, or whether it was encumbered. The bank neither advanced credit nor furnished any money to Alexander by reason of his indorsement. It was merely seeking additional security on a debt owed by the Peter Company. It is not contended that Alexander or the Alexander Grocery Company made any representations to the bank as to said property, or as to his solvency, at the time Alexander indorsed said notes. What others may have told the bank at the time in that regard would not be binding on the owner of the equitable title to the land.

■ We are clear in the view that where a bank, for its own protection, procures a surety, in no wise obligated to it, as additional security for another's debt, it is in no position to assert an estoppel against the owner of the equitable title to lands appearing in the surety's name, merely on the grounds that the security does not turn out to be as adequate as the bank took it to be at the time. Especially so, where there is no showing that the owner of the equitable title to such land did anything to induce the bank to accept such surety, other than what the records showed. In any event, if estoppel were applicable in the instant case, we think the evidence, without detailing it here, as to the facts on which it is attempted to be invoked, was such as to require the submission of the factual issues involved to the jury.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.

## On Defendant in Error's Motion for Rehearing.

■ Defendant in Error earnestly insists, among other things, that filing of motions by each party, at the close of the evidence, for an instructed verdict in its behalf was tantamount to a demurrer to the evidence, amounted to a waiver of a jury trial, and that under such circumstances, if there be competent evidence to support the trial court's judgment, it is our duty to sustain it. This contention was fully discussed and effectively and specifically disposed of by this court in Citizens' National Bank v. Texas Compress Co., 294 S.W. 331, writ re-

fused. Nor does the case of Senter v. Dixie Motor Coach Corporation, 128 Tex. 389, 97 S.W.2d 945, in any manner change the rule announced . in the Texas Compress Company Case. In the Senter Case, wherein each party asked for an instructed verdict, the decision of the Court of Civil Appeals, 67 S.W.2d 345, was sustained by the Supreme Court, not on the grounds contended for by the Defendant in Error herein, but on the grounds that under the written contract there involved, the appellee corporation was, as a matter of law, under the undisputed facts, entitled to an instructed verdict in its behalf. Manifestly the Senter Case has no application where fact issues are presented wherein the evidence is sharply conflicting; in which· instance the rule laid down in the Texas Compress Company Case controls.

Defendant in Error's motion is overruled.

Overruled.