

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN     AUSTIN 11, TEXAS

~~XXXXX XXXXXXXXX~~ XXXX
ATTORNEY GENERAL

Dr. H. G. Towle, President
Texas State Board of Examiners in Optometry
Snyder, Texas

Dear Sir:

> Opinion No. 0-1588
> Re: Does the Board of Optometry have authority to limit
> the amount or percentage that could be paid to a jewel-
> ry store by an optometrist, (and related questions)
> under Articles 4552-4566, inclusive, Vernon's Civil
> Statutes, 1925, as amended.

We are pleased to reply to your letter of October 17, 1939, wherein you say:

"The State Board of Optometry would like to have a con-
struction of H.B. 410, passed by the Forty-sixth Legislature,
in regard to Subsections (b), (f), (g), (h) and (i) of Section 8,
Article 3462. We are especially interested in these subsec-
tions by reason of the fact that a few optometrists are working
in jewelry stores and are entering into contracts whereby a
certain percentage of their fees are split with the owner of the
jewelry store in lieu of rent.

"In view of the Subsections as set forth above, and also
Section 16 of H.B. 410, we would like to have your opinion as
to * * *"

1. "Whether or not the board would have authority to limit
the amount or percentage that could be paid to the jewelry store
by the optometrist, and

2. "If we could do so, as to whether or not the Board could
adopt a rule by which the percentage allowed from the optome-
trist's practice would in no event exceed the usual and custom-
ary rental for the same or similar space in the adjacent property,
or in the same locality.

3. "Also, under Section 16 of H. B. 410, could the board adopt rules and regulations covering practice by optometrists in jewelry stores whereby the optometrist must pay his own bills, advertising and all his equipment and merchandise.

4. "Under Section 16, could the board require that a separate contract for rent by required, and a separate one for handling accounts, and that all material and equipment be billed to the optometrist and paid by the optometrist."

In our opinion the board would not have authority to limit the amount or percentage that could be paid by the optometrist to the jewelry store.

Article 4556, Vernon's Civil Statutes, 1925, as amended, provides, in part:

"The board shall have power to make such rules and regulations not inconsistent with this law as may be necessary for the * * * regulation of the practice of optometry * * *"

Thus, the board could make such regulations that might be necessary for the regulation of the practice of optometry, but such regulations, as provided by the Legislature, must not be "inconsistent with this law."

We now call attention to Article 4566, Vernon's Civil Statutes, as amended, which reads:

"Provided that it shall not be construed as a violation of this Act for any optometrist to lease space from an establishment on a percentage or gross receipts basis or to sell, transfer or assign accounts receivable."

Since the Legislature has provided that such leasing, as is mentioned above, is not a violation of the Optometry Act, in our opinion any regulation tending to limit or fix the amount or percentage that could be paid by the optometrist to the jewelry store would be improper because it would be "inconsistent with this law", and contrary to the expressed intent of the Legislature.

Due to the fact that we have answered your first question in the negative, and since your second question depended on the first, your second question must be answered likewise.

In our opinion your third and fourth questions must both be answered in the negative.

By virtue of the Fourteenth Amendment to the United States Constitution and Section 19 of the Bill of Rights of our State Constitution, a person is deemed to have a constitutional right to contract with reference to lawful matters, which includes the use of his property.

> See 9 TEX. JUR., § 90, p. 522;
> 16 C.J.S., § 575, p. 1167;
> TAYLOR v. LEONARD (Tex. Civ. App.) 281 S.W. 596.

The right to make contracts is declared to be both a liberty and a property right and to be within the protection of the guaranties against the taking of property without due process of law. An enactment which impairs this right is held to be invalid.

> 9 TEX. JUR., § 90, p. 523.
> 16 C.J.S., § 575, p. 1167;
> HALL v. HIX, (Tex. Civ. App.) 297 S.W. 491.

> "The right of an optometrist, duly licensed, to conduct his business or practice optometry, is a property right protected by the Constitution. DENT v. W. VA., 129 U.S. 114, 123, 124, 9 Supt. Ct. 231, 32 L. Ed. 623; DOUGLAS v. NOBLE, 261 U.S. 165, 43 Sup. Ct. 303, 67 L. Ed. 590."

> HARRIS v. STATE BOARD OF OPTOMETRICAL EXAMINERS, Sup. Ct. of Penn. 1926, 136 Atl. 237,

and, therefore, any regulation providing that an optometrist must "pay his own bills, advertising and all his equipment and merchandise" or providing "that a separate contract for rent be required, and a separate one for handling accounts, and that all material and equipment be billed to the optometrist and paid by the optometrist" would be invalid as contravening the above mentioned provisions of the United States and Texas Constitution.

We are aware of the fact that this right to practice optometry is not an inalienable right, but is subject to a proper exercise of the police power. Our statutes relating to the practice of optometry were enacted by the Legislature under this power; the purpose of said statutes and the intent of the Legislature was to protect the public health.

33 TEX. JUR., § 4, p. 294, § 5, p. 295, § 7, p. 296.
HILLIARD v. STATE, 7 Tex. Crim. App., 69;
BAKER v. STATE, 91 Tex. Crim. Rep. 521, 240 S.W.
924, 22 A.L.R. 1163;
STATE v. GOLDMAN, 44 TEX. 104,

and the statutes having this aim are to be construed in harmony with such purpose and policy. This is well expressed in the case of GOLDING v. SCHUBACH OPTICAL CO., Sup. Ct. of Utah, 1937, 70 Pac. (2d) 871, where the court says on page 874:

"The state has spoken on the subject of optometry and optometrists, not for the purpose of conferring any special privileges upon optometrists, nor to put any special restrictions upon them, but to preserve and protect the public against quacks and charlatans, who, however incompetent they might be, would prey upon the desire and necessity of the people to protect their eyesight. Chapter 11 of Title 79, R.S. Utah 1933 (the statute referring to optometry) was enacted by the Legislature because that body felt that the protection of eye sight was of public concern, and one not qualified should not be permitted to examine eyes and diagnose and prescribe treatment, or types of glasses, to cure the defects, or preserve the failing sight. The act must therefore be construed in the light of the purposes of its enactment; that is, as a measure to protect the health and eyesight of the people, and when this purpose is accomplished, it is not within the province or power of the court to extend it beyond such purposes; or to read into it something not designed to protect the public interest and health, but to grant monopolies, regulate private business or relationships, grant special privileges, or curtail the normal human rights and liberties."

The Board of Optometry could make such regulations that would not be inconsistent with the law, but under the above cited authorities, any such regulation adopted must be for the purpose of protecting the public health.

In the case of HARRIS v. STATE BOARD OF OPTOMETRICAL EXAMINERS, supra, the court said on page 239:

"Therefore, the manner, scope, and extent of the practice are the subject of legislative inquiry and control but the regulations must be reasonable. The Legislature, under the police power, does not possess the power to enact rules which have no substantial relation to the end to be obtained. It cannot unreasonably prevent or limit the practitioner from acquiring the business for which he was licensed. Legislature do not have the power, under the guise of police regulation, to arbitrarily invade the personal right and liberty of the individual. * * *

"The manner or mode of exercising a lawful occupation may be regulated only in the interest of public health or to secure safety to the citizens. The Legislature cannot adopt, as regulations, the ethics of the profession which may limit the practice to be secured or the method of procuring it."

Thus, any regulation passed by the Legislature, or by an administrative board, must be for the purpose of protecting the public health; the regulations must be reasonably related to the end desired to be attained (the protection of the public health). Any rules which are not calculated to attain this end are invalid, particularly when they abrogate any of the inherent rights guaranteed under the constitution.

See 16 C.J.S., § 178, p. 548, § 188, p. 556, § 195, p. 562;
9 TEX. JUR., § 78, p. 506;
STONE v. KENDALL (Tex. Civ. App.), 268 S.W. 759.

In our opinion, such regulations as you mention in your letter, cannot be said to be regulations designed to protect the public health. In the case of STATE v. BORAH, 76 Pac. (2d) 757 Sup. Ct. of Ariz. 1938, the court said on p. 759:

"In determining, therefore, whether or not a regulation of the practice of medicine in any of its branches is a reasonable one, and thus within the power of the Legislature to enact, the test must always be whether or not it is reasonably necessary and appropriate for the protection of the public health."

It is our opinion that the regulations which are mentioned in your letter, are not reasonably related to the purpose for which our law on optometry was passed. They are not necessary and appropriate for the protection of the public health. Such regulations would be a denial of the freedom of contract and, in this, would contravene the Fourteenth Amendment of the United States Constitution and Section 19 of Article 8 of the Texas Constitution. Under the authorities cited, and the reasons herein stated, the answer to each of your questions must be answered in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Walter R. Koch_
Walter R. Koch
Assistant

By _Harry Shuford_
Harry Shuford

APPROVED NOV 29, 1939

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

HS:ob