**FRY v. HARKEY et al.**

No. 10643.

Court of Civil Appeals of Texas.
San Antonio.

May 22, 1940.

Rehearing Denied June 26, 1940.

C. W. Trueheart and B. A. Greathouse, both of San Antonio, and R. S. Crawford and Grover C. Jackson, both of Crystal City, for appellant.

Carl Runge and J. V. Wheat, both of Houston, for appellees.

NORVELL, Justice.

This is a suit to remove cloud from title of approximately 303 acres of land in Zavala County, Texas, owned by appellant, plaintiff below; the purported cloud being evidenced by a letter addressed to appellee, Federal Land Bank of Houston, purporting to grant an easement for irrigation purposes in favor of a certain 215-acre tract belonging to appellee, H. L. Harkey.

Trial was to a jury, but at the conclusion of the testimony both sides moved for an instructed verdict and agreed "that the court should withdraw the case

from the jury and determine all issues in the case." The fact that both sides move for an instructed verdict does not amount to a waiver of a jury. Alexander Co. v. First National Bank of Lagrange, Tex.Civ. App., 119 S.W.2d 718. Here, however, the judgment quoted from above shows that a jury determination of fact issues was expressly waived, and therefore the case must be considered as if no jury had been impaneled. Judgment was against appellant and in favor of appellees upon their cross-action setting up the validity of the disputed easement. No findings of fact or conclusions of law were filed, and it is therefore our duty to uphold the judgment of the trial court, provided the implied findings which the judgment carries with it are supported by the evidence. Moody-Seagraves Ranch v. Brown, Tex.Civ.App., 69 S.W.2d 840.

Briefly stated, the facts giving rise to this controversy are as follows:

During the year 1933 appellee Harkey owned two tracts of land in Zavala County, Texas, one containing 215 acres, and the other, approximately 303 acres. Harkey desired a loan from the Federal Land Bank of Houston upon the 215-acre tract. As a precedent for the making of the loan, the bank required that he secure an easement to use water for irrigation purposes from a well situated upon the 303-acre tract. The latter tract was mortgaged to Rosa, Mathilda and Eda Wolf. Harkey promised the Wolf sisters that he would do and perform certain things if they would join with him in the execution of the required easement. Harkey and the Wolfs executed the following letter, which was delivered to the Land Bank:

"San Antonio, Texas, August 11, 1933.
"In re: Application No. 120,030, H. L. Harkey.
"The Federal Land Bank of Houston,
"Houston, Texas.
"Gentlemen:

"We, the undersigned owners and holders of liens on lands belonging to H. L. Harkey in Zavala County, Texas, upon which a well used for irrigation purposes is situated, do hereby agree that in the event of a loan being made by said Federal Land Bank of Houston to said H. L. Harkey upon certain 215 acres of land, other than the land upon which the undersigned lien-holders have a lien, we will in writing agree and consent that water from said well,

which is located upon the land covered by liens held by the undersigned lien holders, may be used for the purpose of irrigating the lands so to be mortgaged to said Federal Land Bank of Houston, with the understanding, however, that water from said well shall continue to be used to irrigate the lands upon which the undersigned lien holders have a lien.

"Respectfully yours,
"H. L. Harkey,
"Owner.
"Rosa Wolf
"Mathilde Wolf
"Eda Wolf,
"Lienholders."

The Land Bank knew nothing of the promises made by Harkey to the Wolf sisters in order to secure their execution of the above letter, and advanced its money upon the security offered by Harkey after receiving the letter. Harkey wholly failed to carry out his promises and agreements with the Wolf sisters, and defaulted on his mortgage to them, with the result that the 303-acre tract was foreclosed and acquired by Bert C. Fry, the appellant here, during the year 1938.

From the record, it also appears that after the bank received the letter and made the loan an attempt was made to secure the Wolf sisters' execution of a formal written instrument setting out the terms and conditions of the easement mentioned in the letter. These attempts failed, and in 1936 Harkey acknowledged the letter before a notary public and the same was recorded in the deed records of Zavala County, giving rise to the alleged cloud upon title, which appellant sought to remove.

■ Appellant's primary contention is that as Harkey failed to carry out the promises and agreements made by him to induce the Wolf sisters to sign the letter, the consideration for the easement failed, and was consequently unenforcible. The appellant takes the position that the letter was part of an agreement between the Wolf sisters on one hand and Harkey on the other, and that the Land Bank as a third party beneficiary can not claim the benefit of the agreement, because the consideration therefor has wholly failed.

This contention must be overruled. The letter upon its face purports to be a joint offer made by Harkey, as the owner of the two tracts involved, and the Wolf sisters, as lien holders of one tract, to the Land

Bank, offering to give an easement if the bank would make a loan upon the 215-acre tract. This offer was accepted by the bank and the loan made. The agreement between the Wolfs and Harkey on one hand and the bank on the other was supported by a valid consideration; the advance of the bank's money upon the security offered, which was a detriment to the bank. Agreements between the Wolf sisters and Harkey, secret in the sense that they were unknown to the Land Bank, do not affect the bank's rights. James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743; Johnson v. Weed, Tex.Civ.App., 52 S.W.2d 917; Mayfield v. Eubank, Tex.Civ.App., 278 S.W. 243.

■ Appellant also contends that the letter in question should be construed as an offer to negotiate concerning an easement rather than as an unqualified offer to grant an easement. In support of this contention, appellant relies upon the following wording appearing in the letter, "we will in writing agree and consent that water from said well * * * may be used for the purpose of irrigating the lands so to be mortgaged to said Federal Land Bank of Houston."

The letter, a written instrument, must be construed as a whole in order to determine the intention of the parties. We construe the letter to be an unqualified offer which was accepted by the bank. It was not an offer to negotiate. The letter does not support a construction that no easement or contract should arise unless and until a future written agreement should be entered into between the parties. The mere fact that it may have been contemplated by the parties that a more formal agreement would be entered into between the parties does not prevent the agreement evidenced by the letter from being binding and effective. International Harvester Co. v. Campbell, 43 Tex.Civ. App. 421, 96 S.W. 93, 99; 12 Am.Jur. 522, § 25.

At most, the record here raised an issue of fact as to the intention of the parties which was determined adversely to appellant by the trial court, under the agreement contained in the judgment that the "court could withdraw the case from the jury and determine all issues in the case." Rosebud Oil & Cotton Co. v. Merchants' & Planters' Oil Co., Tex.Civ.App., 248 S.W. 116.

Appellant also contends that the agreement evidenced by the letter is unenforcible because of Art. 1288 and subdivision 4 of Art. 3995, Vernon's Tex.Civ.Stats.

■ The briefs filed herein contain rather lengthy discussions of the statutes of fraud and conveyances, but from our view of this case it is not necessary to discuss the various contentions set forth. We have held that the contract is one between Harkey and the Wolf sisters, as promissors, on one hand and the Land Bank, as promisee, upon the other, and that the rights of the Land Bank are not affected by Harkey's failure to perform his agreements with the Wolf sisters. We also hold that the evidence is sufficient to support an implied finding that the Land Bank relied upon the letter in making the loan; that the bank intended to loan its money upon land which could be irrigated. The evidence also shows that water from the well on the 303-acre tract had been used to irrigate the 215-acre tract from the year 1927 up to the time of the trial. Under these holdings and fact circumstances, the statute of frauds does not prevent the use of extrinsic evidence to identify the lands and well mentioned in the letter. There is no doubt as to the location of the lands and well concerning which the parties intended to contract. The connecting ditches and conduits for irrigating the 215-acre tract were built and in place when the letter was written. The bank accepted the proposal made in the letter by making the loan. The contract thereupon from the bank's standpoint became an executed contract. The bank's performance and the use of the well for a period of over five years after the writing of the letter, for irrigating the 215-acre tract, upon which the bank has a mortgage, takes the case out of the statute of frauds. A refusal to enforce the easement would be unjust and inequitable. American National Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161; Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397; Callahan v. Walsh, Tex. Civ.App., 49 S.W.2d 945; Handal v. Cobo & Dosal, Tex.Civ.App., 225 S.W. 67.

■ Appellant also contends that the Land Bank's cross-action is barred by limitation, Art. 5531, Vernon's Tex.Civ. Stats. This contention is based upon the position that the letter properly construed is no more than an agreement to make an

agreement in writing. We do not agree with appellant's construction of the letter, for the reasons above set out. We have held that the letter and its acceptance by the bank in making the loan, constituted an executed contract giving rise to an easement. Limitation upon a suit to protect or enforce the easement does not start to run until the contract giving rise to the easement is breached or repudiated, or the exercise of the easement right is challenged or prevented. 28 Tex. Jur. 168.

We are of the opinion that the trial court, by judgment, properly fixed and determined the extent and legal rights incident to the easement involved except in the particular hereinafter noticed. The judgment provides that the water rights established in favor of the Land Bank, its successors and assigns, should be subject to the prior right of appellant, his heirs and assigns to use said water for irrigating the 303-acre tract.

The Land Bank, by cross-assignment, contends that the letter contemplates a joint use of the water well. The letter contains a proviso that the easement is given "with the understanding, however, that water from said well shall continue to be used to irrigate the lands upon which the undersigned lien holders have a lien." Under this provision, if water from the well for any particular period should be insufficient for the irrigation of both tracts, the available water would be used to irrigate the 303-acre tract. The trial court's construction of the agreement was therefore correct.

Appellant's fourteenth assignment of error reads as follows: "The trial court erred in rendering judgment upon the Bank's cross-action, declaring the right to use the water for domestic purposes upon the 215 acre tract, as well as for irrigation purposes; because such judgment is unsustained by either pleading or proof."

This assignment is sustained for the reasons therein set forth.

The judgment of the trial court will be reformed by eliminating therefrom the adjudication of the right in favor of the Land Bank to use water for domestic purposes upon the 215 acre tract. The judgment as reformed will be affirmed and costs of appeal taxed against appellees.

## On Motion for Rehearing.

In the original opinion rendered herein, we construed the recitations contained in the judgment of the trial court as constituting a waiver of a jury determination of such fact issues as might be in the case. We held that the case should be considered as a trial to the court without a jury.

The appellant upon rehearing contends that our construction of the judgment is incorrect and that the basis thereof was an instructed verdict to the jury. The trial court did go through the form of instructing a verdict for the appellee, but the recitation that the parties agreed "that the court should withdraw the case from the jury and determine all issues in the case" clearly shows a waiver of the determination of the fact issues, if any, by the jury, and the examination of the record prior to the rendition of the original opinion was made upon the basis that a jury had been waived.

Appellee has now moved for leave to file a supplemental transcript containing a "corrected judgment" entered nunc pro tunc by the trial court on May 30, 1940. In the corrected judgment the recitation "that the court should withdraw the case from the jury and determine all issues in the case" is eliminated and the following recitations appear: " * * * but at the conclusion of the evidence on January 5, 1939, the plaintiff moved for an instructed verdict and the defendants each moved the Court for an instructed verdict, and the Court stated from the bench that if any party wished any issue of fact submitted to the jury, he would consider submission of such issue because he didn't want either side to afterwards complain that there were issues of fact which should have been submitted to the jury, and it was agreed between all the parties that there were no issues which should be properly submitted to the jury and that the judgment should be determined by the Court on questions of law on the undisputed facts; and the Court having heard the pleadings, evidence and argument of counsel, is of the opinion and finds that the law on the undisputed facts is with the defendants and against the plaintiff on plaintiff's suit, and that plaintiff should take nothing by his said suit."

The matters contained in the supplemental transcript do not relate to the jurisdiction of this Court, and although we have some doubt as to our authority to

consider the same, under Rule 22 for Courts of Civil Appeals, 142 S.W. xii, we have decided to permit its filing in order to obviate, if possible, any dispute between the parties as to what actually occurred in the trial court.

The "corrected judgment," shown in the supplemental transcript, presents some difficulties of interpretation. The evidentiary facts in this case are undisputed, but a fact or jury issue may arise from undisputed facts. Commercial Standard Ins. Co. v. Davis, Tex.Sup., 137 S.W. 2d 1. We are of the opinion that when parties agree that a court shall render judgment upon admittedly undisputed facts, they, in effect, agree that the court shall determine all fact issues arising from those undisputed facts. The legal effect of the corrected judgment in this particular and under the facts of this case is no different from that of the original judgment.

In deference to appellees' earnest contentions relating to the proper construction of the corrected judgment, as well as the original judgment, we have again examined the statement of facts bearing in mind the rule that in cases where an instructed verdict is given, all issuable facts are to be resolved against the appellee rather than in support of the judgment (Brand v. Fernandez, Tex.Civ. App., 91 S.W.2d 932), and have come to the conclusion that if we be mistaken in our construction of the original or corrected draft of the judgment involved, the facts as shown by the record present a case in which the giving of a peremptory instruction was correct. We are of the opinion that the construction given the letter in question in our original disposition of the case is supported by the letter itself, which discloses the intention of the parties as a matter of law. We are further of the opinion that under the circumstances of this case it conclusively appears that the appellee did rely upon the letter and the purported grant of the easement therein. The grant of the easement was a prerequisite for the loan which was actually made after the letter had been received by the bank.

All other matters raised in appellant's motion for rehearing are sufficiently discussed in our original opinion. Appellant's motion for leave to file the supplemental transcript is granted.

The motion for rehearing is overruled.